UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUSALITO YACHT HARBOR,<br><br>    Plaintiff,<br><br>    v.<br><br>M/V SELENE, A 1989 BAYLINER MOTOR YACHT OF APPROXIMATELY 38.2 FEET IN LENGTH AND 13.4 FEET IN BEAM, U.S. COAST GUARD OFFICIAL NO. 957265, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNIS,<br><br>    Defendant. | Case No. 24-cv-09322-DMR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE**<br><br>Re: Dkt. No. 31 |

Plaintiff Sausalito Yacht Harbor brings this in rem action to satisfy maritime liens related to Defendant M/Y Selene (the "Vessel"). Default was entered against the Vessel on April 29, 2025. [Docket No. 29.] Plaintiff then filed this Motion for Interlocutory Vessel Sale and Authorization to Credit Bid. [Docket No. 31, "Mot."] Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). [Docket No. 13.][1] Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for resolution without oral argument and vacated the June 26, 2026 hearing. [Docket No. 33.]

For the reasons stated below, the motion is granted.

---

[1] Section 636(c) typically requires the consent of all parties, including unserved parties. *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). However, in "in rem forfeiture proceedings, the Ninth Circuit has held that a putative claimant's failure to comply with the applicable filing requirements precludes standing as a party to the action, such that the property owner's consent to magistrate judge jurisdiction is not a prerequisite to the entry of default judgment against his interest in the subject property." *KKMI Sausalito, LLC. V. Vessel "Self Inflicted"*, 428 F. Supp. 3d 200, 204 (N.D. Cal. 2019) (citing *United States v. Real Property*, 135 F.3d 1312, 1316-17 (9th Cir. 1998)). Indeed, *Williams* recognized this in rem exception. *Williams*, 875 F.3d at 504. This court therefore has the requisite authority to determine this motion for vessel sale without obtaining consent of the vessel owner.

# I.     BACKGROUND

## A.     Factual Background

The following background is taken from Plaintiff's Complaint.  [Docket No. 1, "Compl."]

Plaintiff operates a 600 slip marina known as the "Sausalito Yacht Harbor," located at 501 Humbolt Avenue, Sausalito, California 94965.  *Id.* ¶ 2.  The Vessel is a 1989 Bayliner motor yacht of 38.2 feet in length and 13.4 feet in beam.  *Id.* ¶ 3.  The Vessel is documented with the U.S. Coast Guard under Official Number 957265, and is owned by Vincent Weigel.  *Id.* ¶¶ 3, 5.

On May 16, 2014, Weigel executed a Maritime Contract for Private Wharfage (the "Wharfage Contract"), in which Plaintiff agreed to provide wharfage and other services for the benefit the Vessel in exchange for monthly fees.  *Id.* ¶¶ 6-7 & Ex A (Wharfage Contract).  Under the Wharfage Contract, fees are due no later than the first day of each month and, if not paid by the 15th day, are subject to a late charge of 10% of the sum due.  Compl. ¶ 7; *id.*, Ex. A ¶ 5.  On May 16, 2014, Weigel executed an Addendum to License Agreement – Living Aboard (the "Addendum"), whereby Plaintiff allowed Weigel to live on the Vessel while berthed at Plaintiff's marina.  Compl. ¶ 6 & Ex. B (Addendum).

Plaintiff alleges that, beginning in August 2023, the Vessel's account fell progressively further into arrears.  *Id.* ¶ 9.  Despite multiple requests for payments, Plaintiff has not received any payments toward satisfaction of accrued arrearages since April or May 2024.  *Id.* ¶ 10 ("Despite multiple requests therefor, beginning in May, 2024 and continuing to date, PLAINTIFF has received no payments whatsoever toward satisfaction of accrued arrearages, or in payment of monthly fees under the Wharfage Contract and Addendum."); *id.* ¶ 15 ("[S]ince no payment toward satisfaction of arrearages for currently due fees were received since April, 2024 . . . .").

On August 5, 2024, Plaintiff sent Weigel a letter demanding payment of the arrearages then due, and notified him of Plaintiff's election to terminate the tenancy effective September 15, 2024. *Id.* ¶ 16.  The letter further informed Weigel that if the Vessel did not vacate the marina by September 15, 2024, the Vessel would be subject to arrest, and "wharfage fees would accrue at marina's 'usual guest/transient rate of $2.00 per foot of vessel length or the length of the slip (whichever is greater), per day, until the vessel is vacated from the Marina or arrested by the U.S.

United States District Court
Northern District of California

1    Marshal.'" *Id.*; *see id.*, Ex. A (Wharfage Contract) ¶ 37.

2        Plaintiff alleges that it "has provided wharfage services in a workmanlike manner that is

3    consistent with the requirements of the Wharfage Contract and the prevailing industry standards,

4    and it has otherwise fully satisfied all contractual obligations required of it as a maritime services

5    provider." *Id.* ¶ 17.

6        **B.    Procedural Background**

7        Plaintiff initiated this action on December 22, 2024, seeking arrest and interlocutory sale of

8    the Vessel.  *See* Compl.  On that same date, Plaintiff filed an ex parte motion for issuance of warrant

9    in rem, an ex parte motion for appointment of substitute custodian and for authorization for

10   movement of defendant vessel, and a motion for issuance of warrant in rem.  [Docket Nos. 3-5.]

11   The court granted the applications and motion on February 18, 2025.  [Docket Nos. 16, 17.]

12       On April 17, 2025, Plaintiff filed a motion for entry of default against the Vessel.  The Clerk

13   entered default on April 18, 2025.  [Docket Nos. 28, 29.]

14   **II.    LEGAL STANDARD**

15       The Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions of

16   the Federal Rules of Civil Procedure (the "Supplemental Rules") govern maritime actions in rem.

17   Fed. R. Civ. P. Supp. R. A(1)(A)(ii).  Supplemental Rule E(9)(a)(i) authorizes courts to order a

18   vessel sold if one of three criteria are met:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

19

20   > (B) the expense of keeping the property is excessive or disproportionate; or

21   > (C) there is an unreasonable delay in securing release of the property.

22   "A party moving for interlocutory sale of a vessel need only show that one of these three criteria is

23   met." *Sausalito Yacht Harbor v. S/V SOGGY*, No. 19-CV-01268-TSH, 2019 WL 5091171, at *2

24   (N.D. Cal. July 5, 2019), *report and recommendation adopted as modified sub nom. Harbor v. S/V*

25   *Soggy*, No. 19-CV-01268-JSW, 2019 WL 5091161 (N.D. Cal. Aug. 13, 2019) (citation omitted).

26       Courts should not grant a motion for interlocutory sale unless the defendant has had

27   sufficient time—typically four months—to post a bond to secure the vessel's release.  *Bay Marine*

28   *Boat Works, Inc. v. M/V GARDINA*, No. 18-CV-01855-HSG, 2018 WL 3536993, at *2 (N.D. Cal.

United States District Court
Northern District of California

3

1    July 23, 2018) (citing *Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Official No. 1130283*, No.

2    08cv2044 BTM (WMC), 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009)).

3    　　Upon granting a motion for interlocutory sale:

4    　　　All sales of property shall be made by the marshal or a deputy
         marshal, or by other person or organization having the warrant, or by
5        any other person assigned by the court where the marshal or other
         person or organization having the warrant is a party in interest; and
6        the proceeds of sale shall be forthwith paid into the registry of the
         court to be disposed of according to law.
7

8    Fed. R. Civ. P. Supp. R. E(9)(b).

9    **III.    DISCUSSION**

10   　　Plaintiff argues all three criteria identified in Supplemental Rule E(9)(a)(i) are met here.

11   Mot. at 7-14.

12   　　**A.    Deterioration**

13   　　Plaintiff contends that the Vessel is deteriorating as it sits idle. *Id.* at 7-9. In support of its

14   argument, Plaintiff submits the Declaration of Ray Jones, a licensed yacht broker of 42 years and

15   President of Long Beach Yacht Sales, Inc. Docket No. 32-1 ¶ 1 ("Jones Decl."). Jones describes

16   himself as "an experienced boater" who has "sold many thousands of vessels over the years." *Id.*

17   He has also "served as an expert in many cases involving vessel condition and valuation matters[.]"

18   *Id.* (citing cases).

19   　　According to Jones, "[i]t is commonly understood among experienced vessel owners, yacht

20   brokers, and others who routinely deal with boats that even well and regularly maintained vessels

21   *inevitably* deteriorate in condition and value over time." *Id.* ¶ 4 (emphasis in original). He opines

22   that "deterioration is *substantially* exacerbated when vessels (as in this case) sit idle for extended

23   periods in a salt water environment" and that the "VESSEL can be expected to further deteriorate

24   in condition and value as she sits idle." *Id.* (emphasis in original). This is because "[w]hile an

25   arrested vessel sits idle, her engines, generators and other equipment are not operated under load (if

26   at all), and such disuse can detrimentally impact the condition and value of the vessel." *Id.* Thus,

27   "[t]he longer the DEFENDANT VESSEL remains under arrest the greater the extent of the

28   deterioration[.]" *Id.*

Plaintiff further argues that the Vessel's "maintenance is of *necessity limited* – the focus simply being on preservation from accident," as required by the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel ("Custodian Order"). Mot. at 8 (emphasis in original); Docket No. 17 ¶¶ 4(a)-(f) (ordering Plaintiff to "provide, as necessary under the circumstances, [inspection, general custodial, and minor maintenance] services for the safekeeping and preservation of the DEFENDANT VESSEL"). Thus, while Plaintiff has ensured that the Vessel is preserved, no one has conducted the general maintenance on the Vessel required to prevent deterioration since at least February 18, 2025.

The court finds that the Jones Declaration,[2] as well as the limited maintenance that is being performed on the Vessel, supports a finding that the Vessel is "liable to deterioration, decay, or injury by being detained in custody pending the action[.]" Fed. R. Civ. P. Supp. R. E(9)(a)(i)(A). A number of California federal courts have accepted Jones' opinion in connection with a motion for interlocutory vessel sale, including his opinion that vessels that sit idle inevitably deteriorate in condition and value. *See, e.g.*, *Tindini P/L v. Bruce*, No. 18-CV-04639-EDL, 2019 WL 1095824, at *2 (N.D. Cal. Jan. 15, 2019), *report and recommendation adopted*, No. 18-CV-04639-RS, 2019 WL 1095798 (N.D. Cal. Feb. 6, 2019) ("It is both common sense and supported by Mr. Jones's declaration that the vessel is likely to deteriorate in condition as it remains arrested without maintenance, which is likely to impact the vessel's vale."); *Sausalito Yacht Harbor*, 2019 WL 5091171, at *2; *Pier 32 Marina v. S/V LORENA GRAYCE*, No. 19CV1495-MMA (AGS), 2020 WL 584092, at *1 (S.D. Cal. Feb. 6, 2020); *Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 988 (S.D. Cal. 2020).

**B.     Excessive or Disproportionate Cost**

Plaintiff contends that the cost of keeping the Vessel in custody is excessive and disproportionate. The Custodian Order sets "wharfage services at the marina's standard transient

---

[2] A number of California federal courts, including courts in this District, have accepted Jones' opinions in connection with a motion for interlocutory vessel sale, including his opinion that vessels that sit idle inevitably deteriorate in condition and value. *See, e.g.*, *Tindini*, 2019 WL 1095824, at *2; *Sausalito Yacht Harbor*, 2019 WL 5091171, at *2; *Pier 32 Marina*, 2020 WL 584092, at *1; *Bartell Hotels*, 445 F. Supp. 3d at 988.

United States District Court
Northern District of California

1    rate of $2.00 per foot of vessel length per day[;]" "custodial services at a rate of fifty cents per foot

2    of vessel length per day[;]" and an inspection of the Vessel's interior at an inspection rate of $50.00

3    per inspection, to occur at least once a week. *Id.* ¶¶ 4(b)-(d). Plaintiff asserts that, "through June 24,

4    2025 [or 110 days since the Custodial Order], custodial fees will have accrued in a sum of not less

5    than $11,200.00": vessel storage and general custodial fees in the amount of $10,450 (110 days x

6    $95), plus inspections in the amount of $750 (110 days / 7 days – 15 weeks x $50). Mot. at 11.

7        Based on Jones' review of "detailed photographs" of the Vessel's "engines, generator, gear

8    and other appurtenances[,]" he opines that the Vessel has a fair market value of approximately

9    $25,000. Jones Decl. ¶¶ 2-3. This figure incorporates a number of factors that Jones states reduce

10   the Vessel's value, including significant deferred maintenance, degradation of sacrificial anodes,[3]

11   contaminated or degraded diesel fuel, potentially compromised fuel injectors, and potentially

12   damaged underwater running gear, such as propeller, struts, and shafts. *Id.* ¶ 2.

13       As the custodian fees through June 24, 2025 amount to approximately 45% of the Vessel's

14   estimated fair market value, the court finds that the costs are excessive and disproportionate. Fed.

15   R. Civ. P. Supp. R. E(9)(a)(i)(B); *see Sausalito Yacht Harbor*, 2019 WL 5091171, at *3 (fees that

16   amount to over 40% of vessel's estimated value were excessive); *Pier 32 Marina*, 2020 WL 584092,

17   at *1 ("'Maintenance costs of several thousand dollars per month, particularly where [no attempt

18   has been made] to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and

19   disproportionate.'") (quoting *Vineyard Bank*, 2009 WL 799304, at *2; alterations in original).

20       **C.    Delay in Securing Release**

21       Plaintiff argues that an interlocutory sale is also warranted because there has been no attempt

22   to secure the Vessel's release. Mot. at 9-10. A person or entity may seek the release of an arrested

23   vessel by posting adequate security or by entering into a stipulation to release the vessel. Fed. R.

24   Civ. P. Supp. R. E(5)(a)-(c), E(9)(a)(ii). A person claiming an interest in the arrested vessel is also

25   entitled to a hearing on whether the arrest was proper. Fed. R. Civ. P. Supp. R. E(4)(f).

26

27

28   _____

[3] Sacrificial anodes are "used to prevent damage to underwater metals that are exposed to stray electricity in the water." Jones Decl. ¶ 2.

*United States District Court*
*Northern District of California*

The record shows that no one has posted security, entered into a stipulation regarding the Vessel's release, or requested a hearing. "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." *Bartell Hotels*, 445 F. Supp. 3d at 988 (quoting *Vineyard Bank*, 2009 WL 799304, at *2); *see Sausalito Yacht Harbor*, 2019 WL 5091171, at *3 (collecting cases finding that a delay of four to six months is unreasonable).

The Vessel was arrested on March 6, 2025, 110 days ago as of the date of this order. [Docket No. 20.] While this is just short of the four-month timeframe that courts generally use as a guideline, it does not weigh against a finding of unreasonable delay, particularly where the other criteria of Supplemental Rule E(9)(a) have been met.

### D.    Credit Bid

Plaintiff requests authorization to credit bid the lien amount because no other party has asserted any maritime liens against the Vessel, making Plaintiff the senior lienholder. Mot. at 14-15. Local Admiralty Rule 9-2(b) provides that

> a plaintiff or intervening plaintiff foreclosing a properly recorded preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served by that party on all other parties no later than 14 days prior to the date of sale.

Plaintiff requests authorization to credit bid the lien amount attested to under oath in the verified Complaint ($19,098.88 in wharfage fees), which will be established by affidavit as required by Local Admiralty Rule 9-2(b), plus its actual and demonstrable costs of suit (including substitute custodian and other *custodia logis* expenses, but excluding attorneys' fees), to be calculated through the date of the Vessel's sale at the rates set forth in the Custodian Order. Mot. at 15. As set forth above, Plaintiff's custodial fees amount to $11,200. Mot. at 11.

The court authorizes Plaintiff to credit bid at the interlocutory sale in the amount of $30,298.88 ($19,098.88 in wharfage fees + $11,200 in custodial costs), provided that Plaintiff files and serves an affidavit 14 days prior to the date of sale that establishes the total amount of the secured indebtedness. *See Bartell Hotels*, 445 F. Supp. 3d at 989 (granting request to credit bid where plaintiff was the only maritime claimant).

IV.    **CONCLUSION**

For the reasons stated above, the court grants the motion for interlocutory sale and authorizes Plaintiff to credit bid in the amount of $30,298.88, as well as other actual costs of suit, excluding attorneys' fees.

No later than August 25, 2025, Plaintiff shall file a status report indicating whether the sale of the Vessel has taken place or, if not, when Plaintiff expects such sale to occur.

**IT IS SO ORDERED.**

Dated: June 24, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

8